E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
ERIC C. SCHMALE
MATTHEW BELZ
Trial Attorneys
United States Department of Justice
Fraud Section, Criminal Division
     300 N. Los Angeles Street, Suite 2001
     Los Angeles, California 90012
     Telephone: (202) 579-4526 (Belz)
     E-mail:    matthew.belz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                  UNITED STATES DISTRICT COURT

            FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          No. CR 2:21-CR-00198-JAK

          Plaintiff,

                v.                 AMENDED PLEA AGREEMENT FOR
                                   DEFENDANT LILIT GAGIKOVNA BALTAIAN

LILIT GAGIKOVNA BALTAIAN,
  aka "Lilit Gagikovna
  Oganesyan,"

          Defendant.


     1.   This constitutes the plea agreement between LILIT GAGIKOVNA

BALTAIAN ("defendant") and the United States Attorney's Office for

the Central District of California ("USAO") and the Fraud Section of

the Criminal Division of the United States Department of Justice

(collectively, with the USAO, "the United States") in this case.

This agreement is limited to the United States Attorney's Office for

the Central District of California and the Fraud Section of the

Criminal Division of the United States Department of Justice, and

cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.    Defendant agrees to:

a.    At the earliest opportunity requested by the United States and provided by the Court, appear and plead guilty to Count One of the indictment in *United States v. Lilit Gagikovna Baltaian*, 21-CR-00198-JAK, which charges defendant with committing health care fraud in violation of 18 U.S.C. § 1347.

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office, and the Court.

g.    Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

h.    Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The United States is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to

2

satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the United States and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all the documents requested therein, to the United States by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at to 312 North Spring Street, 11th Floor, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the United States to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the United States inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.   Defendant understands and acknowledges that as a result of pleading guilty pursuant to this agreement, defendant will be excluded from Medicare, Medicaid, and all Federal health care programs.  Defendant agrees to complete and execute all necessary documents provided by the United States Department of Health and Human Services, or any other department or agency of the federal government, to effectuate this exclusion within 60 days of receiving the documents.  This exclusion will not affect defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.

## THE UNITED STATES' OBLIGATIONS

4. The United States agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e. Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 17 or higher. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

## NATURE OF THE OFFENSE

5. Defendant understands that for defendant to be guilty of the crime charged in Count One of the Indictment, that is, health care fraud, in violation of Title 18, United States Code, Section 1347, the following must be true: (a) defendant knowingly and

4

willfully executed a scheme or plan to defraud a health care benefit
program, or a scheme or plan to obtain money or property owned by or
under the custody or control of a health care benefit program by
means of material false or fraudulent pretenses, representations, or
promises; (b) defendant acted with the intent to defraud, that is,
the intent to deceive and cheat; (c) Medicare was a health care
benefit program; and (d) the scheme or plan was executed in
connection with the delivery of or payment for health care benefits,
items, or services.

PENALTIES AND RESTITUTION

6.    Defendant understands that the statutory maximum sentence
that the Court can impose for a violation of Title 18, United States
Code, Section 1347, is: 10 years' imprisonment; a 3-year period of
supervised release; a fine of $250,000 or twice the gross gain or
gross loss resulting from the offense, whichever is greatest; and a
mandatory special assessment of $100.

7.    Defendant understands that defendant will be required to
pay full restitution to the victim(s) of the offense to which
defendant is pleading guilty.  Defendant agrees that, in return for
the United States' compliance with its obligations under this
agreement, the Court may order restitution to persons other than the
victim(s) of the offense to which defendant is pleading guilty and in
amounts greater than those alleged in the count to which defendant is
pleading guilty.  Defendant agrees that the Court may order
restitution to any victim of any relevant conduct, as defined in
U.S.S.G. § 1B1.3, in connection with the offense to which defendant
is pleading guilty.  The defendant agrees that the applicable amount
of restitution is at least $1,449,050.  The parties recognize and

1    agree that the amount could change based on facts that come to the
2    attention of the parties prior to sentencing.

3        8.   Defendant understands that supervised release is a period
4    of time following imprisonment during which defendant will be subject
5    to various restrictions and requirements.  Defendant understands that
6    if defendant violates one or more of the conditions of any supervised
7    release imposed, defendant may be returned to prison for all or part
8    of the term of supervised release authorized by statute for the
9    offense that resulted in the term of supervised release, which could
10   result in defendant serving a total term of imprisonment greater than
11   the statutory maximum stated above.

12       9.   Defendant understands that, by pleading guilty, defendant
13   may be giving up valuable government benefits and valuable civic
14   rights, such as the right to vote, the right to possess a firearm,
15   the right to hold office, and the right to serve on a jury.
16   Defendant understands that she is pleading guilty to a felony and
17   that it is a federal crime for a convicted felon to possess a firearm
18   or ammunition.  Defendant understands that the conviction in this
19   case may also subject defendant to various other collateral
20   consequences, including but not limited to revocation of probation,
21   parole, or supervised release in another case, and suspension or
22   revocation of a professional license.  Defendant understands that
23   unanticipated collateral consequences will not serve as grounds to
24   withdraw defendant's guilty plea.

25       10.  Defendant and her counsel have discussed the fact that, and
26   defendant understands that, if defendant is not a United States
27   citizen, the conviction in this case makes it practically inevitable
28   and a virtual certainty that defendant will be removed or deported

from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

11.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the United States agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

At all relevant times, Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b), and a "federal health care program" as defined by Title 42, United States Code, Section 1320a-7b(f).

Home health care was supportive health care provided to Medicare beneficiaries in their homes.  Home health care was

prescribed by a treating physician to a beneficiary if the beneficiary had developed an illness or injury that required skilled care, but not at the level provided by an acute facility such as a hospital or at a skilled nursing facility.

To qualify for the Medicare home health benefit, among other requirements, a beneficiary must: (1) have been confined to his or her home; (2) have been under the care of a physician; (3) have received services under a CMS Form 485 Home Health Certification and Plan of Care ("485") established and periodically reviewed by a physician; (4) have had a face-to-face encounter with a physician or approved provider either before or within a specified period of time from the start of home health care; and (5) need skilled nursing care on an intermittent basis, physical therapy, or speech-language pathology, or have a continuing need for occupational therapy.

Beginning in or around January 2012, and continuing through at least in or around July 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant, together with others known and unknown, aiding and abetting each other, knowingly, willfully, and with the intent to defraud, executed and willfully caused to be executed a scheme and artifice: (1) to defraud a health care benefit program, namely, Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (2) to obtain money from Medicare by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

1        Defendant was a physician licensed to practice in

2   California.  Defendant submitted a Medicare Form 855I to enroll as a

3   Medicare provider and in which she agreed not to knowingly present or

4   cause to be presented false claims to Medicare, and to only present

5   or cause to be presented claims for medically necessary services that

6   complied with all applicable laws.

7        Defendant received Medicare beneficiary information from

8   the following home health agencies and their owners and operators:

9            a.   Home Health Agency 1, which was a home health

10   agency located in Glendale, California.  Co-Schemer 1 was the owner

11   and operator of Home Health Agency 1.

12           b.   Home Health Agency 2, which was a home health

13   agency located in Panorama City, California.  Co-Schemer 2 was the

14   owner and operator of Home Health Agency 2.

15           c.   Home Health Agency 3, which was a home health

16   agency located in Glendale, California.  Co-Schemer 3 was the owner

17   and operator of Home Health Agency 3.

18           d.   Home Health Agency 4, which was a home health

19   agency located in Panorama City, California.  Co-Schemer 4 was the

20   owner and operator of Home Health Agency 4.  (Collectively, the

21   "Home Health Agencies").

22        Defendant then referred the Medicare beneficiaries whose

23   information she received from the Home Health Agencies back to the

24   Home Health Agencies for purported home health care.  The Home Health

25   Agencies brought to defendant stacks of paperwork to certify

26   beneficiaries for home health, including 485s and Physician

27   Certifications of Face-to-Face Encounters ("Face-to-Face

28   Certifications"), in which the physician attests that they had a

face-to-face encounter with the beneficiary and the physician states the reasons for ordering home health care, their clinical findings to support the need for home health care, and the reasons the beneficiary is homebound and in medical need of home health care.

Defendant signed the paperwork provided by the Home Health Agencies, including Face-to-Face Certifications that falsely certified that defendant had face-to-face encounters with the beneficiaries and that the beneficiaries were qualified to receive home health care, regardless of the beneficiaries' actual conditions. In some instances, defendant pre-signed blank, undated Face-to-Face Certifications knowing that the Home Health Agencies would later falsify the forms to make it appear as if defendant saw the beneficiaries and had made clinical findings to support the need for home health for the beneficiaries.

In fact, as defendant and Co-Schemers 1 through 4 at the Home Health Agencies then knew, defendant had not had face-to-face encounters with many of these beneficiaries or made any clinical findings to support their need for home health care, but defendant certified these beneficiaries for home health care anyway.  Defendant understood that approximately 50 percent of the beneficiaries whom she certified for home health for Home Health Agency 2, for example, did not need home health care, but nonetheless certified such beneficiaries for home health care anyway.

As defendant then well knew, Co-Schemers 1 through 4, at Home Health Agencies 1 through 4, respectively, each used defendant's fraudulent referrals, 485s, Face-to-Face Certifications, and other fraudulent medical documentation to support false claims to Medicare

1  for home health services that were not medically necessary, not

2  provided, or both.

3          In exchange for providing and/or signing the fraudulent

4  referrals, Face-to-Face Certifications, 485s, and other fraudulent

5  medical documentation from Home Health Agency 1, Home Health Agency

6  2, and Home Health Agency 4, defendant received cash, which was

7  referred to as "gas money," and cash gifts around Christmas and New

8  Year's, as well as other gifts including gift cards.  To carry out

9  the health care fraud scheme, defendant acted with the intent to

10 defraud, that is, the intent to deceive and cheat.

11         In addition to receiving a cash benefit related to these

12 referrals, defendant also used the information for these

13 beneficiaries that she obtained from the Home Health Agencies to

14 submit false and fraudulent claims to Medicare for which she was

15 reimbursed directly.  Defendant submitted claims to Medicare for

16 signing fraudulent Face-to-Face Certifications and 485s for some of

17 these same beneficiaries, knowing that she certified beneficiaries

18 for home health that was not medically necessary, not provided, or

19 both.

20     As a result of the scheme, between approximately January 2012

21 and July 2018, defendant caused the home health agencies to submit at

22 least $984,356 in false and fraudulent claims to Medicare for the

23 cost of purported home health care provided to beneficiaries for whom

24 defendant was listed as the attending or referring physician and for

25 which as a result of defendant's conduct the home health agencies

26 were paid a total of at least $1,449,050.  As a result of defendant's

27 conduct Medicare suffered an actual loss of at least $1,449,050, and

28

Defendant was also paid approximately $42,792 by Medicare directly for certifying such beneficiaries for home health.

SENTENCING FACTORS

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.  Defendant and the United States agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. §2B1.1(a)(2) |
| Loss Amount of more than $550,000 but less than $3.5 million: | 14–16 | U.S.S.G. §2B1.1(b)(1)(H),(I) |
| Federal Health Care Offense: | 2 | U.S.S.G. §2B1.1(b)(7) |

The United States will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraphs 2—3 are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Defendant agrees that the loss amount

12

is at least $1,449,050, corresponding to a 14-level enhancement under U.S.S.G. §2B1.1(b)(1)(H). The United States reserves the right to argue — and the defendant reserves the right to contest — that the applicable loss is more than $1.5 million but less than $3.5 million, corresponding to a 16-level enhancement under U.S.S.G. §2B1.1(b)(1)(I). Further, the United States reserves the right to seek a 2-level enhancement for an abuse of position of trust or skill pursuant to U.S.S.G. § 3B1.3. Other than those reserved arguments identified above and subject to paragraph 27 below, defendant and the United States agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed, except that the parties agree they may argue for or contest the application of a two-level reduction under U.S.S.G. § 4C1.1. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the United States were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the United States, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the United States would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

14. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15. Defendant reserves the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines

based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel — and if necessary have the Court appoint counsel — at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel — and if necessary have the Court appoint counsel — at every other stage of the proceeding.

d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.  The right to confront and cross-examine witnesses against defendant.

f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.  The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.  Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

1

<u>WAIVER OF APPEAL OF CONVICTION</u>

2   17.  Defendant understands that, with the exception of an appeal

3 based on a claim that defendant's guilty plea was involuntary, by

4 pleading guilty defendant is waiving and giving up any right to

5 appeal defendant's conviction on the offense to which defendant is

6 pleading guilty.  Defendant understands that this waiver includes,

7 but is not limited to, arguments that the statute to which defendant

8 is pleading guilty is unconstitutional, and any and all claims that

9 the statement of facts provided herein is insufficient to support

10 defendant's plea of guilty.

11   <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND</u>

12   <u>WAIVER OF COLLATERAL ATTACK</u>

13   18.  Defendant agrees that, provided the Court imposes a total

14 term of imprisonment on all counts of conviction within or below the

15 range corresponding to an offense level of 23 and the criminal

16 history category calculated by the Court, defendant gives up the

17 right to appeal all of the following: (a) the procedures and

18 calculations used to determine and impose any portion of the

19 sentence; (b) the term of imprisonment imposed by the Court; (c) the

20 fine imposed by the Court, provided it is within the statutory

21 maximum; (d) to the extent permitted by law, the constitutionality or

22 legality of defendant's sentence, provided it is within the statutory

23 maximum; (e) the amount and terms of any restitution order, provided

24 it requires payment of no more than $1,449,050; (f) the term of

25 probation or supervised release imposed by the Court, provided it is

26 within the statutory maximum; and (g) any of the following conditions

27 of probation or supervised release imposed by the Court: the

28 conditions set forth in Second Amended General Order 20-04 of this

1  Court; the drug testing conditions mandated by 18 U.S.C.

2  §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions

3  authorized by 18 U.S.C. § 3563(b)(7).

4    19.  Defendant also gives up any right to bring a post-

5  conviction collateral attack on the conviction or sentence, including

6  any order of restitution, except a post-conviction collateral attack

7  based on a claim of ineffective assistance of counsel, a claim of

8  newly discovered evidence, or an explicitly retroactive change in the

9  applicable Sentencing Guidelines, sentencing statutes, or statutes of

10  conviction.  Defendant understands that this waiver includes, but is

11  not limited to, arguments that the statute to which defendant is

12  pleading guilty is unconstitutional, and any and all claims that the

13  statement of facts provided herein is insufficient to support

14  defendant's plea of guilty.

15    20.  The United States agrees that, provided (a) all portions of

16  the sentence are at or below the statutory maximum specified above

17  and (b) the Court imposes a term of imprisonment within or above the

18  range corresponding to an offense level of 17 and the criminal

19  history category calculated by the Court, the United States gives up

20  its right to appeal any portion of the sentence, with the exception

21  that the United States reserves the right to appeal the amount of

22  restitution ordered if that amount is less than $1,449,050.

23                 RESULT OF WITHDRAWAL OF GUILTY PLEA

24    21.  Defendant agrees that if, after entering a guilty plea

25  pursuant to this agreement, defendant seeks to withdraw and succeeds

26  in withdrawing defendant's guilty plea on any basis other than a

27  claim and finding that entry into this plea agreement was

28  involuntary, then (a) the United States will be relieved of all of

its obligations under this agreement; (b) should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

22.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the United States and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

23.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and a United States Department of Justice Trial Attorney.

### BREACH OF AGREEMENT

24.  Defendant agrees that if defendant, at any time after the effective date, knowingly violates or fails to perform any of defendant's obligations under this agreement (a "breach"), the United States may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the United States to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the United States in writing.  If the United States declares this agreement breached, and the Court finds such a breach

17

to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the United States will be relieved of all its obligations under this agreement.

25. Following the Court's finding of a knowing breach of this agreement by defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND

PRETRIAL SERVICES OFFICE NOT PARTIES

26. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the United States' sentencing recommendations or the parties' agreements to facts or sentencing factors.

27. Defendant understands that both defendant and the United States are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the United States and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the United States' obligations not to contest the facts agreed to in this agreement.

28. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to

fulfill all defendant's obligations under this agreement.  Defendant understands that no one — not the prosecutor, defendant's attorney, or the Court — can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

29.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the United States and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

1    AGREED AND ACCEPTED

2    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
3    CALIFORNIA

4
     E. MARTIN ESTRADA
5    United States Attorney

6

7    _____        11/20/24
     ERIC C. SCHMALE                       _____
8    MATTHEW R. BELZ                       Date
     Trial Attorneys, Fraud Section

9

10   _____        _____
     LILIT GAGIKOVNA BALTAIAN              Date
11   Defendant

12
     _____        _____
13   GARO GHAZARIAN                        Date
     Attorney for Defendant LILIT
14   GAGIKOVNA BALTAIAN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    21

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        _____
LILIT GAGIKOVNA BALTAIAN                 Date
Defendant

22

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am LILIT GAGIKOVNA BALTAIAN's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          Date 11/20/24
GARO GHAZARIAN
Attorney for Defendant LILIT
GAGIKOVNA BALTAIAN

23